DAVID BARNHISEL v. THE COMMERCIAL NATIONAL BANK.

SAME v. SAME.

### Cases No. 2009 and 2010.

LIABILITY OF A PERSON WHO SIGNS HIS NAME WITH THE WORD "AGENT" ADDED.

Where a person draws a number of bills and endorses a number of notes, signing his own name thereto, with the word "agent" added, such person is personally liable upon them, and cannot be heard to explain that he was the agent of his wife and known by the bank, which discounted such bills and notes, to be such agent when he drew the bills and endorsed the notes.

MARVIN, J.

Each of these cases comes to this court upon a petition in error and involves the same questions. In the first thirty-seven causes of action are set out in the petition, all of them upon promissory notes made by various parties, payable to "David Barnhisel, agent," and endorsed in the same way. Most of these endorsements were actually written by W. E. Cruse, who was authorized thereto by David Barnhisel, and the notes were, being thus endorsed, discounted at the Commercial National Bank.

In the second of these cases there are sixty causes of action set out in the petition, twelve of which are upon notes as in the other case, and forty-eight upon bills drawn by "David Barnhisel, agent," on various parties, and discounted at the same bank; and a considerable number of these bills, if not all of them are thus drawn, and the name "David Barnhisel, agent," signed by W. E. Cruse, he adding to the words "David Barnhisel, agent," the words, "by W. E. Cruse." These several pieces of commercial paper were all dishonored; and, as we think fairly shown by the pleadings, they were all properly protested. Each suit was brought by the bank against Barnhisel upon these several pieces of commercial paper and tried to a jury, and in each case judgment was for the bank.

The real question in the cases arising upon the admission of evidence and the charge of the court, is whether the endorsement upon these notes and the signing of the bills by the maker, "David Barnhisel, agent," are such as charge Barnhisel personally for the several amounts of the bills and notes. It is settled in Ohio that if the notes were made and signed, "David Barnhisel, agent," as the maker he would be

personally liable upon them. See the case of *Collins* v. *Buckeye State Insurance Company*, 17 O. S., 215. In the opinion in that case, the court use language which seems to make a distinction between the maker of such paper and the endorser. In that case, however, it is settled that so far as the maker is concerned, it is indifferent whether the holder of the paper had knowledge of the fact that he who made the paper was agent of somebody and also knew who the principal was; that in any event the man signing the paper followed by the word "agent" is still personally liable. Judge Welsh, on page 223 of the opinion says: "The first question made in the case is, whether there is sufficient proof of the insurance company's knowledge that Collins was acting as agent. That question we need not discuss, unless we think the fact of such knowledge would make a defense for Collins against an action on the notes. Would it make such defense? In other words: Where an agent makes a promissory note in the form of these, is he liable as maker of the note, notwithstanding the fact that the payee knew he was acting as such agent at the time. We are of the opinion that he is so liable. To hold otherwise, it seems to us, would be to make a new contract for the parties." He then goes on to discuss the question of whether if he were an endorser the law would be the same, and says: "The cases cited, in which the agent was held not liable, appear to be those where he was sought to be charged as endorser of negotiable paper, or—which is much the same thing—as drawer of bills of exchange. The difference between that class of cases and the present is also quite obvious. Where an agent has the legal title to a note or bill, his indorsement is indispensable to pass that title. The endorsement, like a deed, is a simple transfer of title. The *liability* of the endorser arises, mainly, outside of the endorsement. That liability may be changed without changing the *endorsement* itself. It is a mere implication of law, arising upon the endorsement. No question of the admissibility of parol evidence is involved in such cases."

Without stopping to read further, if the reasoning in that case—the language which I have just read—is the law in Ohio, it would seem to follow that it would have been admissible to show in these cases that Barnhisel was actually the agent of his wife, as it is claimed that he was, and that such agency was known to the bank. In the case of *Robinson* v. *The Kanawha Bank*, 44 O. S., **441**, there is similar reasoning, but in neither of those cases was necessary to determine that question in order to determine the case.

In the case of *Bank* v. *Cook*, 38 O. S., 442, the syllabus reads as follows: "The character of the liability of the drawer of the bill of exchange must be determined from the instrument itself; and the addition of the word "agent" to his name, without anything else on the instrument indicating his principal, does not relieve him from personal liability as drawer of the bill."

That was a case where Cook signed bill, "W. P. Cook, Treas." Suit was brought against Cook. Without stopping to read from the opinion—I have head the syllabus—the court held him liable as maker.

*Farr* v. *Ricker*, 46 O. S., 265, is a case where a note was endorsed in blank, and it was sought to show that the endorser was not liable because the endorsement was to have been "without recourse;" Judge Minshall delivering the opinion, says: "The case presents the question, whether parol evidence is admissible for the purpose of varying

the legal effect of such an endorsement. There has been some conflict in the decisions as to this, but it now seems that the decided weight of authority is against the admission for such purpose. Its admis-ion has generally been placed on the ground that the contract of endorsement is an implied one, not in writing, and so not within the rule excluding parol evidence offered for the purpose of varying or contradicting the terms of a written agreement. But this is not the generally received opinion, and is contrary to the usage and understanding of the commercial world.''

It is said by Justice Matthews in 104 U. S. at page 37: ''The contract created by the endorsement and delivery of a negotiable note, even between the immediate parties to it, is a commercial contract, and is not in any proper sense a contract implied by the law, much less an inchoate or imperfect contract. It is an express contract, and is in writing, some of the terms of which, according to the custom of merchants and for the convenience of commerce, are usually omitted, but not the less on that account perfectly understood.''

Now, in these two cases, and the case of *Bank* v. *Cook, supra,* it seems to us the question was distinctly made as to whether the drawer of a bill may escape liability, where he signs his name as ''agent'' or as ''treasurer,'' by showing that he was actually acting as the agent of another party, and it was held that he could not; and if the contract made by endorsing cannot be explained by parol, then there was no error on the part of the common pleas in holding as it did that the maker, Barnhisel, was liable upon these notes and bills, and could not be heard to explain that he was the agent of his wife and known by the bank to be such agent when he drew the bill and endorsed the notes.

The case of *Babcock* v. *Beman,* 11 N. Y., 200, is cited in a number of cases which bear upon this subject; and in that case it was held that ''An officer of a corporation, to whose order as such a note is made payable and who endorses the same with the addition of his official character, is not personally liable as endorser.'' The reasoning of the court is—and I read from page 202 as follows: ''The case of *Mott* v. *Hicks,* 9 Barb. S. C. Rep., 528, is therefore, a direct adjudication upon this very point by the highest court of original jurisdiction in this state; and it has been acquiesced in and regarded as the law for a great length of time. The question was in the highest degree practical and of more frequent occurrence than almost any other. It, moreover, related to commercial paper, in respect to which it is of the utmost importance that the decisions of the courts should be stable, so that they may be relied on with confidence by the community. We should be, therefore, most reluctant to depart from the principle of the case, even could it be successfully questioned as not in harmony with legal analogies or antecedent cases. We think, however, it is not subject to any such criticism. It be followed in principle in *Brockway* v. *Allen,* 17 Wend., 41, and in *Hicks* v. *Hinde,* 9 Barb., S. C. Rep., 528, and has not been questioned, so far as we know, by any case.''

Now, it will be seen that one of the reasons given by the court in that case is that the law has been for so long a tme recognized in the state of New York—ever since 1823—that it ought not to be disturbed. The case of *Brockway* v. *Allen,* 17 Wend., 41, cited in this case as supporting the proposition, is a case that goes so far as to hold that the maker of a promissory note may show that he was acting as an agent,

and was known by the payee to be so acting when he signed his name as agent so that that authority goes much beyond what is claimed on the part of the plaintiffs in error to be the law in Ohio.

In supporting the proposition that the endorser may show that he is an agent, this case of *Brockway* v. *Allen,* holds that the *maker* may show that *he* was an agent. Now, that is not the law in Ohio, and we think we are justified, as I have already said, in holding on the authority of the cases cited in the 38th and 46th of the Ohio State Reports, that the signing of these various instruments by Barnhisel as agent does not relieve him from liability, even though the court had allowed it to be shown that he was acting as agent of his wife, and that such fact was known to the bank.

Upon the question made as to whether Cruse was authorized by Barnhisel to sign and act for Barnhisel, we are content with the finding of the jury, and the cases are affirmed.

*Phillips & Phillips,* Attorneys for Plaintiff in Error.

*Hoyt, Dustin & Kelley,* Attorneys for Defendant in Error.

---

## MUNICIPAL CORPORATIONS—TELEPHONE COMPANY.

[Montgomery Circuit Court, June 24, 1897.]

Shearer, C. J., and Summers and Wilson, JJ.

STATE EX REL. E. P. MATHEWS, CITY SOLICITOR, v. CENTRAL UNION TELEPHONE CO.

1. EFFECT OF AGREEMENT BETWEEN A MUNICIPAL CORPORATION AND A TELEPHONE COMPANY AS TO THE MODE OF USE OF ITS STREETS.

Where an agreement between a municipal corporation and a telephone company as to the mode of use of its streets has expired by limitation, the municipal corporation cannot oust the company from the use and occupation of its streets until it is made to appear that no agreement as to further use can be made and that the company, after such failure to agree, delays unreasonably to apply to the probate court to fix the mode of use as provided by law.

2. THE MUNICIPAL CORPORATION HAS NO POWER TO FIX THE RENTALS TO BE CHARGED BY THE TELEPHONE COMPANY FOR THE USE OF ITS INSTRUMENTS.

In making an agreement as to the mode of use of its streets, etc., a municipal corporation has no power to fix the rentals to be charged by the telephone company for the use of its instruments; and a refusal of the company to assent to a provision in that behalf is not a failure to agree, within section 3461, of the Revised Statutes.

QUO WARRANTO.

On the 16th day of December, 1895, the city of Dayton, brought this action to oust the Central Union Telephone Company from the streets of the city upon the ground that, as its agreement with the city had expired, it was "exercising a franchise, privilege and right in contravention of law and without authority."

A demurrer to the petition was overruled, and on September 7th, 1896, the defendant filed an answer to which the relator interposed a demurrer which was overruled. A reply was then filed and the cause was submitted to the court upon the pleadings and evidence.